IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL OPEOLUWA EGBELE,<br><br>Petitioner,<br><br>vs.<br><br>PAMELA JO BONDI, in her official capacity as Attorney General of the United States, et al.,<br><br>Respondents. | 0:26-CV-1439<br><br>MEMORANDUM AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

The petitioner is a noncitizen currently detained by U.S. Immigration and Customs Enforcement, seeking a writ of habeas corpus under 28 U.S.C. § 2241. The briefing demonstrates that the petitioner's application for the writ only presents issues of law—and the government does not dispute this point, *see* filing 7 at 9—so the Court declines to hold a hearing. *See* § 2243. The Court will grant the petition.[1]

---

[1] A petitioner seeking release from immigration detention shall be awarded costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), unless the Court finds that the government's position was substantially justified or that special circumstances make an award unjust. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483 (3d Cir. Feb. 2, 2026); *see also, e.g.*, *Yeferson G.C. v. Easterwood*, No. 25-CV-4814, 2026 WL 207266, at *3 (D. Minn. Jan. 21), *report and recommendation adopted*, 2026 WL 209825 (D. Minn. Jan. 27, 2026); *Mairena-Munguia v. Arnott*, No. 25-CV-3318, 2025 WL 3229132, at *5 (W.D. Mo. Nov. 19, 2025); *cf. Bah v. Cangemi*, 548 F.3d 680 (8th Cir. 2008) (evaluating the merits of immigration habeas petitioner's EAJA claim). <u>Any motion for costs and fees pursuant to the EAJA in this case should be filed within 30 days of the entry of judgment</u>. *See* § 2412(d)(1)(B).

BACKGROUND

The government's response (filing 7) presents two issues requiring discussion, but a review of the petitioner's case history—both remote and recent—is necessary to address the government's assertions. The petitioner, a native of Nigeria, entered the United States unlawfully in 2003. Filing 7 at 12. In 2012, he was arrested and charged with a controlled substances offense. *Id*. Removal proceedings were initiated. *Id*. The petitioner filed an application for asylum and for withholding of removal. *Id*.

The immigration judge noted that the petitioner hadn't been convicted of the crime charged against him. Filing 7 at 13. (And indeed, there's no evidence in the record indicating he ever was.) But the immigration judge denied the petitioner's asylum claim and ordered him removed from the United States. Filing 7. That was in July 2012, and according to the government, the petitioner didn't appeal from that order. Filing 7 at 2.

But he wasn't removed, for reasons not entirely clear from the record. The petitioner alleges—and the government does not dispute—that he was released from custody in December 2012 on an order of supervision. Filing 1 at 2. He has remained in compliance with the terms of that order. *Id*.

The petitioner was detained in January 2026,[2] after he appeared for his regular check-in with immigration authorities. He was "not notified of any purported revocation of his [order of supervision] or of an interview" and authorities "did not provide any explanation for the purported revocation of [his order of supervision]." *Id*. at 2, 14.[3] The government asserts that DHS gave

---

[2] The petitioner says January 13, filing 1 at 2, while the government says January 14, filing 7 at 2, but the difference is immaterial.

[3] The government's carefully worded response says "[t]hat same day, a review of DHS records shows that DHS issued Petitioner a Notice of Revocation of Release, explaining that

2

the petitioner notice that his order of supervision was being revoked, "in part" because of his "failure to obtain or attempt to obtain a travel document to Nigeria, as required," and that he would be afforded an interview to respond to the revocation. Filing 7 at 2.

Later that day, the petition was permitted to make a short telephone call to his wife (a U.S. citizen) and said he was being transferred out of state. Filing 1 at 14-15. His counsel was unable to contact him before he was transferred to an unknown location. Filing 1 at 15.

For at least some of the time after his detention, he was apparently held at ERO El Paso Camp East Montana, but his wife learned from another El Paso detainee that he had been transferred out. *Id*. At the time the petition was filed on February 14, 2026, the Ice Online Detainee Locator System produced no matching records and the petitioner's location was unknown to his family and counsel. *Id*. But according to the government, on February 13, the petitioner had been booked into the Torrance County Detention Center in Estancia, New Mexico, where—according to the Ice Online Detainee Locator System—he remains. *See* filing 7 at 2.

## DISCUSSION

The government contends that the petitioner's detention is lawful pursuant to 8 U.S.C. § 1231. Filing 7 at 3. But first, the government contends this case should be dismissed or transferred to New Mexico. Filing 7 at 2-3.

### VENUE

The government asserts that the Court lacks jurisdiction because the petitioner was in New Mexico when the petition was filed. Filing 7 at 3. The

---

Petitioner would be afforded an informal interview to respond to the revocation. . . ." Filing 7 at 2. But that pointedly *doesn't* say he was given such a notice *before* being arrested.

government relies on the general principle that the proper venue for a habeas petition is in the district of confinement. *E.g., Trump v. J.G.G.*, 604 U.S. 670, 672 (2025); *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). The Court questions whether that rule is jurisdictional, as the government claims. *See Padilla*, 542 U.S. at 451 (Kennedy, J., concurring). But regardless, it is the general rule.

However, courts have recognized an exception to this general rule where the government manipulates jurisdiction or impedes a petitioner's attorney's ability to identify the district of confinement. *E.g., Suri v. Trump*, 785 F. Supp. 3d 128, 144-45 (E.D. Va. 2025); *Ozturk v. Trump*, 777 F. Supp. 3d 26, 41-42 (D. Mass. 2025). These courts primarily rely on Justice Kennedy's concurrence in *Padilla*, joined by Justice O'Connor, recognizing that exceptions to the general rule may be warranted "to protect the integrity of the writ or the rights of the person detained." 542 U.S. at 454. Ultimately, the detainee in *Padilla* was not subject to Justice Kennedy's exception, given that the detainee's transport was not "designed to play games with forums." *Id.* at 455; *accord Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000).

The situation here is far different. The starting point for this exception is whether the petitioner's location was unknown at the time of filing. *E.g., Ozturk v. Trump*, 777 F. Supp. 3d 26, 31 (D. Mass. 2025); *Suri v. Trump*, 785 F. Supp. 3d 128, 136 (E.D. Va. 2025); *Aleksander B. v. Trump*, No. 26-cv-170, 2026 WL 172435, at *1 (D. Minn. Jan. 22, 2026). Here, the petitioner alleges, and the government doesn't dispute, that it was.

And the petition further alleges the efforts of the petitioner's counsel and family to locate him, and the general failure of those efforts. In point of fact, it's still not proven where the petitioner was when the petition was filed—the government's *brief* claims it was New Mexico, but that's not supported by any actual evidence. *See Miguel T.G. v. Bondi*, No. 26-CV-243, 2026 WL 172722, at *1 (D. Minn. Jan. 22, 2026). The best information available to the petitioner's counsel was that the petitioner had been in El Paso at some point but

transferred out to parts unknown. Apparently the government believes the petitioner was wrong to file in Minnesota and should have filed in the Western District of Texas, which would *also* have been wrong.

This case illustrates precisely the sort of shell game that Justice Kennedy's concurrence cautioned against. Under these circumstances, the Court finds that the unknown custodian exception applies. *See Adriana M.Y.M. v. Easterwood*, No. 26-CV-213, 2026 WL 184721, at *2-3 (D. Minn. Jan. 24, 2026); *Tah L. v. Trump*, No. 26-CV-171, 2026 WL 184524, at *4 (D. Minn. Jan. 19), *report and recommendation adopted as modified*, 2026 WL 184529 (D. Minn. Jan. 23, 2026).

## SECTION 1231

The government argues that because the petitioner is subject to a final order of removal, he's properly detained pursuant to § 1231. Filing 7 at 3. But his order of removal was final in 2012, and he wasn't removed.

Instead, he was released on an order of supervision, which conferred due process rights that are enshrined in a regulatory scheme with which the government hasn't complied. *See Vang v. Bondi*, No. 26-CV-1381 (D. Minn. Feb. 18, 2026). The government's brief doesn't contradict the petitioner's allegations that he was detained without a prior notice of revocation. And even the assertions in the brief about the circumstances are only assertions, unsupported by actual evidence. Nothing in the brief even attempts to identify any change in circumstances that would warrant detention, and the only evidence submitted is from 2012. *See* filing 1 at 11-23.

The only conclusion to be drawn from the record is that the government has presented a *post hoc* justification for an indiscriminate detention—and even that *post hoc* justification falls short of the mark. For the reasons explained by the Court in *Vang*, the Court finds that the petitioner's continued detention is unlawful. *See id*. Accordingly,

IT IS ORDERED:

1. The Petition for Writ of Habeas Corpus (filing 1) is granted.

2. The government shall, if necessary, immediately return the petitioner to the District of Minnesota.

3. When the petitioner is in Minnesota, the government shall immediately release the petitioner from custody subject to and in accordance with the conditions in his preexisting Order of Supervision, and shall return any personal property seized from the petitioner when detained.

4. No later than **February 20, 2026**, the government shall file a status report certifying compliance with this Order.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated this 18th day of February, 2026.

BY THE COURT:

_John M. Gerrard_
John M. Gerrard
Senior United States District Judge

---

[4] The government is encouraged to **strictly** abide by this deadline. The Court notes that the petitioner apparently remains in New Mexico despite several days having passed since the Court ordered him returned to Minnesota. *See* filing 5. The government's failure to comply with that order already puts it on the edge of being in contempt of court.